Minton v. Stahlman.

---

MINTON v. STAHLMAN.

(*Nashville.*   January  28,  1896.)

1. BANKS AND BANKING.  *Individual liability of officers and direct-
   ors defined.*

   The officers and directors of a banking corporation are not indi-
   vidually liable, either under § 2507 (M. & V.) Code or upon
   common law principles, for the loss of a general deposit by
   the bank's insolvency, in a suit brought against them in a
   Court of Law by the depositor for his own benefit, unless the
   loss has resulted, not from their mere negligence or inatten-
   tion, but from their intentional fraud or willful mismanage-
   ment of the affairs of the bank.   (*Post, pp. 100–104.*)

   Code construed: § 2507 (M. & V.).

   Cases cited and approved: 7 Mo. App. Rep., 417; 67 Mo., 264.

   A different rule prevails in suits by or for the corporation brought
   in a Court of Equity.   Wallace v. Bank, 89 Tenn., 652; Shea v.
   Mabry, 1 Lea, 344;  Hume v. Bank, 9 Lea, 728.

2. SAME.  *Same.  Pleading.*

   In a suit by a depositor to recover against the officers, directors,
   and stockholders of an insolvent banking corporation as indi-
   viduals, the averment that they wrongfully, negligently, and
   knowingly failed to comply substantially with its articles of
   incorporation, and deceived the public and plaintiff in relation
   to its liabilities, in several particulars enumerated, does not
   state a case within § 1716 (M. & V.) Code, which subjects them
   to liability for damages resulting from their "intentional
   fraud in failing to comply substantially with the articles of
   incorporation or in deceiving the public or individuals in rela-
   tion to their liability."   (*Post, pp. 104–107.*)

   Code construed: § 1716 (M. & V.); § 1488 (T. & S.).

   Case cited and approved: Hume v. Bank, 9 Lea, 728.

3. SAME.  *Same.  What constitutes insolvency.*

   Under § 5718 (M. & V.) Code, making the managing officers of a
   banking corporation individually liable to depositors for money

received on deposit, when they knew, or had good reason to believe, the bank insolvent, a bank is treated as insolvent when it becomes unable to meet its liabilities as they become due in the ordinary course of its business. It is not insolvent, within the meaning of this statute, so long as it is meeting its liabilities as they become due, and there is a reasonable expectation on the part of its officers familiar with its business affairs of continuing to do so. Whether the officers acted in good faith and upon a reasonable expectation of continuing the business must be determined from a consideration of all the attendant circumstances. (*Post, pp. 107–111.*)

Code construed: § 5718 (M. & V.).

Cases cited and approved: Comfort *v.* McTeer, 7 Lea, 660; Tradesmen's Pub. Co. *v.* Knoxville Car Wheel Co., 95 Tenn., 634; 23 Blatch., 191; 16 Wall., 277; 133 U. S., 576.

4. SUPREME COURT. *Immaterial error.*

If a demurrer to one count of a declaration should be erroneously sustained, the error is immaterial, and constitutes no cause for reversal, if the same issue is presented in another count, and determined upon the trial. (*Post, pp. 106, 107.*)

5. SAME. *Insufficient assignment of error.*

An assignment of error "that the verdict is contrary to the evidence" is bad. It must aver that there is no evidence to support the verdict. (*Post, p. 111.*)

---

FROM DAVIDSON.

---

Appeal in error from Second Circuit Court of Davidson County. CLAUDE WALLER, J.

R. L. MORRIS, for Minton.

VERTREES & VERTREES, E. H. EAST, BRYAN & CARTWRIGHT, and TILLMAN & TILLMAN for Defendants.

McALISTER, J.  This is a suit by a depositor against the officers and directors of the defunct Bank of Commerce, to hold them individually liable for the loss of a deposit claimed to have been made at a time when the bank was insolvent.  There was a verdict and judgment in favor of the defendants. The plaintiff appealed, and has assigned errors.  The declaration contains four counts.  There was a demurrer to the second and third counts, which was sustained by the Circuit Judge, and this is assigned as error.  The second count alleged that "said defendants, being directors, officers, and stockholders of the Bank of Commerce, etc., and having due notice and knowledge of such facts and circumstances as, by ordinary diligence and business skill would have shown them its true financial condition, which was that of insolvency, and having reason and cause to know that anyone depositing money or evidences of debt therein for collection, was liable to lose the money so deposited or collected, by reason of its insolvency, etc., did continue to keep open, and operate the same as a bank, and invite the custom and patronage of plaintiff and others; and that plaintiff, being induced thereby, and deceived and misled by such wrongful act of defendant, did, on or about the twenty-fifth day of February, 1893, deposit therein the sum of $1,197.60.  There was repaid to plaintiff the sum of $200, but the remainder is yet due and owing, though demanded."

The demurrer to this count is, viz.: "They are

not liable as directors of the Bank of Commerce for receiving deposits when they merely had notice or knowledge of facts and circumstances which, by use of ordinary diligence and business skill, would have shown the said Bank of Commerce to be insolvent. In order to be liable, it must appear that they knew the said bank to be insolvent, and willfully and knowingly received the deposits.'' The insistence of plaintiff's counsel, in opposition to the demurrer, is that notice of such facts and circumstances which, by the use of ordinary diligence, would have led the defendants to a knowledge of the insolvency of the bank is the equivalent of such knowledge.

In the case of *Wallace* v. *Lincoln Savings Bank,* 89 Tenn., 652, this Court said, viz.: ''The diligence required of directors has been defined as that exercised by prudent men about their own affairs, being that degree of diligence characterized as ordinary, . . . and if loss results to the corporation by breaches of trust or acts of negligence committed by those left in control, which, by due care and attention on their part (the directors), could have been avoided, they will be responsible to the corporation.'' In that case the bill was filed by a shareholder and creditor against the officers and directors of an insolvent bank, to recover a loss to the corporation caused by their negligence, which was, in effect, a bill by the corporation itself, since, in such a case, the recovery would inure to the benefit of all the creditors and shareholders.

In the case of *Shea* v. *Mabry*, 1 Lea, 344, the directors of a railroad were held individually liable to a judgment creditor of the corporation upon the ground of a misappropriation of the company's funds.   It was held in that case that ignorance of a misappropriation of these funds by officers of the company will not excuse the directors when they have the means of  knowledge.

These cases, and others that might be cited from our reports, are all proceedings in equity by the corporation, or a creditor or shareholder on behalf of the corporation, in which a different rule is applied than obtains in a Court of Law.   The fact that a man deposits money in an insolvent bank, believing it to be solvent, and thereby loses his money, gives him no cause of action at common law against the directors.   *Duffy* v. *Byrne*, 7 Mo. App. Rep., 417.   Aside from statutory provisions, directors are not liable to depositors in an action at law (*Furz* v. *Spaunhurst*, 67 Mo., 264; *Duffy* v. *Byrne*, 7 Mo. App. Rep., 419), unless the deposit was induced by the fraudulent conduct of the directors.

As said by this Court in *Hume* v. *Bank*, 9 Lea, 728, "a director is the agent of the corporation, and, ordinarily; is only liable to the corporation.   If he becomes liable directly to a creditor, it must be by statute or by some conduct which creates a privity of contract between them, or which results in a tortious injury to the creditor for which an actiuo *ex delicto* will lie."

Minton *v.* Stahlman.

Says Mr. Thompson in his Commentaries on Private Corporations, Vol. III., Sec. 4137: "The fact that directors and officers of a corporation have mismanaged its business does not render them liable to creditors unless they are made liable by the provisions of the articles of incorporation or by statute. The proposition is that a wrong to the corporation which may and does affect the credit of the company and the creditors generally- is not a wrong to them as individuals, and they cannot maintain an action against the directors as for a tort." Again, the author says: "Neither, in the absence of a special statute, are the directors of a bank liable to a general depositor for mismanaging the affairs of a bank so that his debt is lost, for, unless they are made liable by statute, the breach of duty of which they have been guilty is to the bank and not to its customers. But it is conceded," continues the author, "that directors of a bank may make themselves liable to ordinary depositors in damages for false and fraudulent representations made by them, whereby the depositors have suffered loss, and, perhaps, also for acts done by them with intent to deceive and defraud the public generally, which have had that effect and which have caused loss to such depositors." *Ib.*, Sec. 4138; *Zinn* v. *Mendel*, 9 West Va., 595.

We have, in this State, a statute regulating the individual liability of bank directors to the creditors of the corporation. Section 2507 (M. & V.), Code,

provides, viz.: "And, if any director or directors of any of the banks in this State shall be guilty of any fraud or willful mismanagement of the affairs of such bank, by which any loss shall be occasioned to its creditors, such director or directors, upon legal ascertainment of the facts, shall be individually liable for such loss," etc.

This statute fixes a rule for determining the individual liability of banking directors to the creditors of the corporation, and the basis of that liability is fraud or willful mismanagement. It was held by this Court, in *Hume* v. *Bank*, 9 Lea, 728, that "this section provides for a case of intentional fraud and willful mismanagement." It is not tantamount to a charge of intentional fraud or willful mismanagement to allege that, "having due notice and knowledge of such facts and circumstances as, by ordinary diligence and business skill, would have shown them its true financial condition, which was that of insolvency." This, at most, is a charge of negligence and inattention, whereas, there is no liability to creditors or depositors, under this statute, without fraud or willful mismanagement. The demurrer to the second count was, therefore, properly sustained.

The third count seeks to hold defendants liable on the ground that, being stockholders, directors, and officers, they wrongfully, negligently, and knowingly failed to comply, substantially, with its articles of incorporation, and deceived the public and plaintiff in relation to its liabilities, in this:

1. That said bank was operated without first having had subscribed or paid in the capital stock of said bank, or any sum nearly approximating said amount, as fixed by its by-laws or otherwise agreed upon.

2. By representations publicly and privately made, by newspaper advertisements, and otherwise, deceived plaintiff and the public as to the amount of the actual capital stock of said bank, and its true financial condition.

3. By failure of the president and cashier to publish, every six months, in a newspaper printed in Davidson County, a statement of the condition and affairs of the corporation.

4. By failing and neglecting to keep a full and true record of all their proceedings, and of copying in the minutes of the corporation an annual statement of receipts and disbursements, etc.

Defendant demurred to this first count, and the demurrer was sustained. It was assigned as ground of demurrer "that defendants were not liable for receiving this deposit as officers of the bank without first having its capital stock, or any sum approximating said amount, subscribed or paid in. Neither are they rendered liable by the fact that it was represented to plaintiff and the public that the capital stock was paid in. If it was not paid, such capital stock is an asset for the benefit of creditors, and can be recovered."

It is probable, from the language employed, this

third count was intended by the draftsman of the declaration to be based upon § 1716 (M. & V.), Code, viz.: "Intentional fraud in failing to comply substantially with the articles of incorporation or in deceiving the public or individuals in relation to their liabilities, subjects all officers, stockholders, or direct-ors, knowingly participating therein, to the penalties of a misdemeanor, and, moreover, to damages at the suit of any person injured thereby." As already stated, it was ruled by this Court, in *Hume* v. *Bank*, 9 Lea, 728, that the cases provided for in this section are cases of intentional fraud, for such intention is plainly expressed in the statute.

The charge in the declaration that defendants wrongfully, negligently, and knowingly failed to comply with the articles of incorporation is hardly equivalent to a charge that such failure was the result of an intention to defraud, as is required by this statute. But, if it be conceded that the demurrer to this count was improperly sustained, we think the whole case was fairly submitted to the jury upon the issue raised in the first count. It was alleged in that count that "the defendants, being stockholders, directors, and officers of said bank, and having the control, direction, and management of its affairs and business, well knowing, or having good reason or cause to know, that said corporation was altogether insolvent, untrustworthy, and irresponsible as a bank, and that it had been in that condition for a long time, recklessly, wrongfully, and

fraudulently did keep open, operate, represent, and hold out said corporation as solvent, whereby plaintiff was induced to make a deposit in said bank, and which, by reason of the insolvency of said bank, was wholly lost to plaintiff.'' The Circuit Judge charged the jury upon the issues raised by this count in respect of the liability of the directors, viz.: ''If any of the defendants, as directors of the Bank of Commerce, fraudulently represented the bank to be solvent, when they knew it was insolvent, or had good reason to believe it was insolvent, and, by reason of these fraudulent representations, the plaintiff deposited his money in the bank, and thereby lost it, then defendants would be liable to plaintiff for the amount lost.'' Upon this issue the case was tried, and a verdict found by the jury in favor of the defendants.

The second assignment is that the Court erred in instructing the jury on the subject of insolvency. The first count of the declaration was based upon § 5718 (M. & V.) Code, viz.: ''If any president, cashier, or other person, having the control or management of any bank in the State, receive on deposit any money in the bank with which he is connected as such president or cashier, or which he controls or manages, when he knows, or has good reason to believe, such bank is insolvent, and the money so deposited is lost by the insolvency of the bank, he shall be guilty of a felony,'' etc. In explaining what constitutes insolvency within the

meaning of this statute, the Court instructed the jury, viz.: "A bank is insolvent when it is unable to meet its liabilities as they become due in the ordinary course of business. A bank is not insolvent, in the sense of this law, as long as it is meeting its liabilities as they become due, and there is a reasonable expectation, on the part of the officers familiar with its business affairs, of continuing to do so. In determining this question of the knowledge of the insolvency on the part of the president or cashier, you should consider their conduct and demeanor in reference to the affairs of the bank, whether or not they were operating in good faith, and whether or not they had a reasonable expectation of redeeming all of the deposits. In short, take all the circumstances in the case, weigh them fairly and impartially, and determine, in case you find that the bank was insolvent on February 23, 1893, whether the president and cashier knew of such insolvency, or had good reason to believe it was insolvent at that time. In arriving at the question of the solvency or insolvency of the bank on the twenty-third of February, 1893, you will look to the condition of the assets and liabilities of the bank at the date of the assignment for the purpose of throwing light upon its condition preceding that date." We think this instruction in accord with the authorities.

In the case of *Roberts* v. *Hill*, 23 Blatch., 191, the Court said, viz.: "Insolvency is that condition

of affairs in which a merchant or business man is unable to meet his obligations as they mature in the usual course of business. An act of insolvency takes place when this condition is demonstrated, and the person has actually failed to meet some of his obligations." *Dodge* v. *Martin*, 17 Fed. Rep.; *State* v. *Myers*, 54 Kan.; *Buchanan* v. *Smith*, 16 Wallace, 277.

So it is held in this State that, although the liabilities of a corporation may greatly exceed its assets, it is not insolvent in such sense that its assets become a trust fund for *pro rata* distribution among its creditors, so long as it continues to be a going concern, and conducts its business in the ordinary way. *Comfort* v. *McTeer*, 7 Lea, 660;. *Tradesman Pub. Co.* v. *Knoxville Car Wheel Co.*, 95 Tenn.

Says Mr. Morawetz, viz.: "A corporation is authorized to continue the management of its affairs, to deal with its property and to assign it for value in due course of business, notwithstanding its actual insolvency, so long as there is an honest intention and a reasonable expectation on the part of the company of redeeming its fortunes," etc. Morawetz on Private Corporations, Vol. II. (2d Ed.), Sec. 786.

We cannot agree with counsel for appellant in the contention that, under the charge of the Circuit Judge, a cashier of an insolvent bank may receive deposits up to the time of making an assignment. When the fact becomes apparent to its officers that

a bank will presently be unable to meet its obligations, the receipt of deposits would unquestionably be fraudulent. We approve the rule on this subject announced by the United States Supreme Court in *St. Louis Railway Company* v. *Johnson*, 133 U. S., 576, viz.: "But it is believed that no case can be found in the books holding that a trader who was hopelessly insolvent, knew that he could not pay his debts, and that he must fail in business, and thus disappoint his creditors, could honestly take advantage of a credit induced by his apparent prosperity, and thus obtain property which he had no reason to believe he could ever pay for. In such a case he does an act, the necessary result of which will be to cheat and defraud another, and the intention to cheat will be inferred." And it was decided "that in the case of bankers, where greater confidence is asked and reposed, and where dishonest dealings may cause widespread disaster, a more rigid responsibility for good faith and honest dealing will be enforced than in the case of merchants and other traders," and "that a banker who is to his own knowledge hopelessly insolvent cannot honestly continue his business and receive the money of his customers, and, although having no actual intent to cheat and defraud a particular customer, he will be held to have intended the inevitable consequences of his own act— that is, to cheat and defraud all persons whose money he receives, and whom he fails to pay before he is compelled to stop business."

The Circuit Judge, in connection with his explanation of what constitutes insolvency, said, viz.: "In determining this question of the knowledge of insolvency on the part of the president and cashier, you should consider their conduct and demeanor in reference to the affairs of the bank—whether or not they were operating in good faith, and whether they had a reasonable expectation of redeeming all the deposits." It is a question, then, of good faith upon the part of the managing officers, based upon knowledge of the affairs of the bank, and a reasonable expectation of redeeming all of their deposits, and discharging their liabilities, as the same mature, in the ordinary course of business. This question was fairly left to the determination of the jury upon all the evidence, and they found in favor of the officers and directors.

The last assignment of error is that the verdict is contrary to the evidence. This assignment, upon its face, is insufficient. Counsel probably intended to say that there was no evidence to support the verdict. But under the uniform and established practice of this Court, if there is any evidence to support the verdict, the judgment of the lower Court will not be disturbed. We find the verdict in this case supported by material evidence, and the judgment must be affirmed.