FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DALLIN FORT,
                    *Plaintiff-Appellant*,

            v.

STATE OF WASHINGTON;
WASHINGTON STATE
DEPARTMENT OF
CORRECTIONS, a political
subdivision and agency of the
State of Washington; KECIA
L. RONGEN, wife and the
marital community composed
thereof; JOHN DOE RONGEN,
husband and marital
community composed
thereof; JEFF PATNODE,
husband and the martial
community composed
thereof; JANE DOE PATNODE,
wife and the martial
community composed
thereof; LORI RAMSDELL-
GILKEY, wife and the marital
community composed
thereof; JOHN DOE
RAMSDELL-GILKEY, husband
and the marital community
composed thereof; ELYSE

No. 21-35265

D.C. No.
4:20-cv-05053-TOR

OPINION

BALMERT, wife and the marital community composed thereof; JOHN DOE BALMERT, husband and the marital community composed thereof; IRENE SEIFERT, wife and the marital community composed thereof; JOHN DOE SEIFERT, husband and the marital community composed thereof; INDETERMINATE SENTENCE REVIEW BOARD, a political subdivision and agency of the State of Washington and Washington Department of Corrections,
                *Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted February 18, 2022
San Francisco, California

Filed July 26, 2022

Before:  Ronald M. Gould and Johnnie B. Rawlinson, Circuit Judges, and Jennifer G. Zipps,[*] District Judge.

Opinion by Judge Rawlinson

---

## SUMMARY[**]

### Prisoner Civil Rights

The panel affirmed the district court's dismissal of an action alleging false imprisonment, negligence and civil rights violations arising from actions taken by the Washington Indeterminate Sentencing Review Board in scheduling plaintiff's hearing.

The Indeterminate Sentencing Review Board is a parole board created by the Washington State Legislature that is tasked with reviewing the sentences of convicted sex offenders to determine whether the offenders should be released on parole. The panel held that under the facts of this case and in the context of the proceedings as a whole, the Review Board's setting of hearings pursuant to Wash. Rev. Code § 9.95.420 was "part and parcel of the decision process," thereby warranting quasi-judicial immunity. The panel rejected plaintiff's contention that the scheduling of the hearing was an administrative task not entitled to quasi-

---

[*] The Honorable Jennifer G. Zipps, United States District Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

judicial immunity. Because the panel agreed with the district court that the Review Board was entitled to quasi-judicial immunity, plaintiff was unable to state a plausible claim for relief against the state defendants.

## COUNSEL

Spencer Babbitt (argued), The Appellate Law Firm, Seattle, Washington, for Plaintiff-Appellant.

Jacob E. Brooks (argued), Assistant Attorney General; Robert W. Ferguson, Attorney General; Washington Attorney General's Office, Spokane, Washington; for Defendants-Appellees.

## OPINION

RAWLINSON, Circuit Judge:

This case requires us to consider whether the scheduling of a hearing by the Indeterminate Sentencing Review Board (Review Board) as mandated by statute is sufficiently intertwined with judicial decisionmaking that the scheduling of the hearing falls within the ambit of quasi-judicial immunity.

Plaintiff-Appellant Dallin Fort (Fort) brought this action against the State of Washington, the Review Board, and its members (State Defendants). Fort specifically seeks review of the district court's decision that the Review Board's "actions relating to [Fort's] release determination hearing fall squarely within the quasi-judicial nature of the [Review

Board's] functions," and that defendants are entitled to quasi-judicial immunity.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's decision granting the State Defendants' motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Review Board is a parole board created by the Washington State Legislature comprised of five members appointed by the Governor.  *See* Wash. Rev. Code §§ 9.95.002; 9.95.003.  The Review Board is tasked with reviewing the sentences of convicted sex offenders to determine whether the offenders should be released on parole. *See* Wash. Rev. Code § 9.95.420.  The Review Board is directed by statute to conduct a review and hearing "to determine whether it is more likely than not that the offender will engage in sex offenses if released on conditions to be set by the board."  *Id.* at § 9.95.420(3)(a).

If an offender's minimum term has expired or will expire within 120 days of arrival at a Department of Corrections facility, the Review Board is required to conduct its determination hearing "no later than one hundred twenty days after the offender's arrival at [that] facility."  *Id*. at § 9.95.420(3)(b).

Fort was convicted of two counts of rape of a child in the first degree, and was sentenced to a minimum term of 132 months in prison and a maximum of life. The Washington Court of Appeals affirmed his conviction, but reversed his sentence and remanded for resentencing.  The trial court resentenced Fort to a minimum of 108 months in prison and

a maximum of life. Fort filed a second notice of appeal, and a personal restraint petition, which was stayed by the Court of Appeals.

In 2014, after a hearing held in accordance with RCW 9.95.420, the Review Board determined that Fort should not be released, and added 60 months to his minimum term. In 2015, the Court of Appeals granted Fort's personal restraint petition (after having previously stayed it), vacated judgment, and remanded for a new trial, following which Fort was again convicted in 2017.

Following his second conviction, Fort was sentenced to a minimum of 120 months in prison with credit for time served, and transferred to Washington Corrections Center in Shelton, Washington. In his complaint, Fort alleged that at that point he had already served over 120 months in prison and the governing statute mandated that a hearing before the Review Board be scheduled no later than "on or about" October 20, 2017. The Review Board held its hearing on July 25, 2018, and issued a final decision on August 14, 2018, recommending Fort's release. The parties agree that Fort was released in 2018.

After his release, Fort brought this action against the State Defendants asserting claims for false imprisonment, negligence, and civil rights violations. The State Defendants moved to dismiss on the basis of quasi-judicial immunity.[1]

---

[1] It is important to note that because Fort was apparently released in 2018, and did not bring this action until 2020, he had no viable claim for prospective injunctive relief. *See Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999). Thus, our analysis does not address, or opine on, the effect a potential claim for prospective injunctive relief would have on the availability of quasi-judicial immunity. *But see Taggart v. State*, 822 P.2d

Specifically, the State Defendants argued that because they were entitled to quasi-judicial immunity, Fort was unable to state a plausible claim for relief. Rejecting Fort's argument to the contrary, and granting quasi-judicial immunity, the district court concluded that "[b]ecause the hearing date, the calculation of [Fort's] minimum sentence and the ultimate decision whether and when to release [Fort] are intertwined, the act of setting the hearing date [was] not purely administrative." The district court relied on Washington precedent holding that "statutorily imposed actions which are so closely related to the judicial or quasi-judicial process must be protected by immunity." Fort filed this timely appeal of the district court's decision.

## II. STANDARD OF REVIEW

We review de novo an order granting a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Depot, Inc. v. Caring for Montanans*, 915 F.3d 643, 652 (9th Cir. 2019). We must determine whether, taking the allegations in the complaint as true, and construing them "in the light most favorable" to Fort, the district court erred in concluding that Fort failed to state a plausible claim for relief. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (citation omitted).

---

243, 247 (Wash. 1992) (en banc) (noting that "judicial immunity is not a bar to . . . prospective injunctive relief") (citation omitted); *Malik v. Morgan*, Case No. 3:17-CV-05875-RBL, 2018 WL 1963797, at *3 (W.D. Wash. Apr. 26, 2018) (recognizing that "immunity does not apply to . . . injunctive claims").

## III.     DISCUSSION

The parties agree that the State Defendants are entitled to quasi-judicial immunity for the discretionary actions and decisions linked to the actual sentencing determination. But, Fort contends that the motion to dismiss was improvidently granted because the scheduling of Fort's hearing does not qualify for quasi-judicial immunity, as scheduling is an "administrative task."

Authority in both the State of Washington and this Court supports the agreed-upon principle that a sentencing review board, or a parole board, is generally entitled to quasi-judicial immunity for judicial-related actions. *See Taggart v. State*, 822 P.2d 243, 248–49 (Wash. 1992) (en banc); *see also Plotkin v. State Dept. of Corr.*, 826 P.2d 221, 223 (Wash. App. 1992); *Sellars v. Procunier*, 641 F.2d 1295, 1302–03 (9th Cir. 1981).

More broadly, "we have extended absolute quasi-judicial immunity" to "non-judicial officers for *purely administrative acts*—acts which taken out of context would *appear ministerial*, but when viewed in context are actually a part of the judicial function." *Castillo v. Castillo* (*In re Castillo*), 297 F.3d 940, 952 (9th Cir. 2002), *as amended* (citation omitted) (emphases added). In *Castillo*, a Bankruptcy Trustee miscalendered a bankruptcy confirmation hearing without notice to the debtor of the rescheduled date, resulting in the debtor's home being sold. *See id*. at 943–44. Castillo successfully sought leave in the bankruptcy court to bring an action against the Trustee. *See id*. at 944. The Bankruptcy Appellate Panel (BAP) affirmed the bankruptcy court in part and reversed the bankruptcy court in part. *See id*. at 943. The BAP agreed that the Castillo action could proceed against the

Trustee for failure to give notice of the rescheduled hearing date. *See id*. at 944. However, the BAP held that Castillo's action could not proceed against the Trustee for damages related to the miscalendaring because that action was protected by quasi-judicial immunity. *See id*. at 943–44. We reversed the BAP's denial of quasi-judicial immunity for failure to give notice of the rescheduled hearing date, holding that "the scheduling of hearings by the bankruptcy trustee is a discretionary function protected by absolute immunity." *Id*. at 951. We determined that the "purely ministerial act[]" of failing to give notice of the hearing was similarly protected. *Id*. at 947, 953. We reasoned that "[b]oth the scheduling and giving of notice of hearings are *part of the judicial function* of managing the bankruptcy court's docket in the resolution of disputes." *Id*. at 951 (emphasis added). We noted the "uniform[ity] among the circuit courts" that have reached this issue. *Id*. We specifically cited with approval the Seventh Circuit's decision in *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996). *See id*. at 952.

In *Wilson*, the plaintiff filed a complaint under 42 U.S.C. § 1983 against an employee of the Illinois Department of Corrections and three members of the Illinois Prisoner Review Board, alleging violations of his due process rights during revocation of his supervised release. *See* 86 F.3d at 1440. Wilson enumerated the violations as: (1) failure to provide adequate notice; (2) failure to provide an opportunity to present evidence and witnesses; (3) failure to adequately explain that the hearing was final; and (4) failure to provide adequate written notice of the reasons for the revocation. *See id*. at 1444. Wilson maintained that "the board members should not be accorded absolute immunity for any of these acts because the acts were not discretionary, but involved *simple compliance with the law*." *Id*. (internal quotation

marks omitted) (emphasis added). The Seventh Circuit concluded that, despite the argument that the Board lacked discretion to deny or postpone the hearing, Board members were protected by immunity, as was the case for the "scheduling failure in *Thompson*."**[2]** *Id*. at 1444–45.

The Seventh Circuit determined that "activities that are *inexorably connected* with the execution of parole revocation procedures and are analogous to judicial action invoke absolute immunity." *Id*. at 1444 (citation and internal quotation marks omitted) (emphasis added). The Court clarified that it is "not only the actual decision to revoke parole" that is protected by judicial immunity, "but also activities that are *part and parcel* of the decision process." *Id*. (citation omitted) (emphasis added). The Seventh Circuit explicated that "judicial acts that are *part of* the judicial function are [not] excluded from absolute immunity because they could be characterized as *nondiscretionary or even ministerial*." *Id*. (emphasis added). Instead, the Seventh Circuit reiterated its analysis from *Thompson*, 882 F.2d at 1184,**[3]** "that conduct deserving of protection includes not only actual decisions, but also those *mundane, even mechanical, tasks* undertaken by judges that are related to the judicial process: The fact that the activity is *routine or requires no adjudicatory skill* renders that activity no less a judicial function." *Id*. at 1444–45 (citation, alteration, and internal

---

**[2]** *Thompson v. Duke*, 882 F.2d 1180 (7th Cir. 1989), involved a "failure to schedule and conduct a timely parole violation hearing."

**[3]** The Seventh Circuit reasoned in *Thompson* that "[i]n the continuum of judicial proceedings some judicial acts require extensive exercise of a judge's decision-making skills and others do not—yet all such acts make up the judicial function regardless of their isolated importance." 882 F.2d at 1184.

quotation marks omitted) (emphases added). We adhere to our holding in *Castillo* and continue to be persuaded by the Seventh Circuit's reasoning in *Wilson* and *Thompson*.

We are not persuaded that the Supreme Court's holding in *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), dictates a different outcome. In *Antoine*, a court reporter was tasked with providing a "verbatim transcript" of a two-day criminal jury trial. *See id*. at 430–31. As a result of her extensive delay in providing the transcript, Antoine's appeal was not heard until four years after his conviction. *See id*. at 431. Antoine's subsequent legal action against the court reporter and her firm was rejected by the district court and this court on the basis of absolute immunity. *See id*. at 431–32. The Supreme Court reversed, *see id*. at 438, explaining that a court reporter's singular duty of creating a verbatim transcript of proceedings is not "functionally comparable" to a judge's duty. *Id*. at 436. Rather, the duty of a court reporter is purely ministerial and non-discretionary, not requiring "the kind of judgment that is protected by the doctrine of judicial immunity." *Id*. at 436–37.[4]

This distinction between a court reporter, whose main duty is the creation of a verbatim transcript, and parole board officials, who have consistently been recognized by courts as "perform[ing] functionally comparable tasks to judges" is important. *Sellars*, 641 F.2d at 1303; *see also Wilson*, 86 F.3d at 1444 (rejecting Wilson's reliance on *Antoine*).

---

[4] We repeat the Supreme Court's important pronouncement that "[w]e do not mean to suggest that [a court reporter's] task is less than difficult, or that reporters who do it well are less than highly skilled. But the difficulty of a job does not by itself make it functionally comparable to that of a judge." *Antoine*, 508 U.S. at 436 (citation omitted).

Indeed, members of the Review Board perform a plethora of discretionary tasks comparable to that of a judge, including: (1) "consider[ing] the department's recommendations"; (2) "contract[ing] for additional, independent examination" of the offender; (3) "conduct[ing] a hearing to determine whether it is more likely than not that the offender will engage in sex offenses if released"; (4) "impos[ing] conditions in addition to those recommended by the department"; and (5) establishing "a new minimum term" if the offender is not released.      Wash. Rev. Code § 9.95.420(1)–(4).

Another crucial distinction exists between an administrative act unrelated to a judicial function (*i.e.*, a judge firing a probation officer, *see Forrester v. White*, 484 U.S. 219, 220–21 (1988)), and an administrative act "inexorably connected" with a judicial function (*i.e.*, scheduling a hearing, *see Wilson*, 86 F.3d at 1444). Although scheduling a hearing may be characterized by some as "mechanical or routine," the fact that scheduling a hearing is an "integral judicial . . . function" places it within the realm of activities protected by quasi-judicial immunity. *Thompson*, 882 F.2d at 1184–85.

In *Castillo*, we took the opportunity to point out that our application of quasi-judicial immunity to administrative acts post-dated *Antoine*.      *See* 297 F.3d at 952.      Indeed, we emphasized that if "purely administrative acts . . . when viewed in context are actually a part of the judicial function," "we have extended absolute quasi-judicial immunity."      *Id*. Under the facts of this case and in the context of the proceedings as a whole, we conclude that the Review Board's setting of hearings pursuant to Wash. Rev. Code § 9.95.420

is "part and parcel of the decision process," thereby warranting quasi-judicial immunity. *Wilson*, 86 F.3d at 1444.

## IV.   SUMMARY

Because we agree with the district court that the Review Board is entitled to quasi-judicial immunity, Fort is unable to state a plausible claim for relief against the State Defendants. *See Castillo*, 297 F.3d at 952; *see also Kwan*, 854 F.3d at 1096 (discussing the standard for surviving a motion to dismiss for failure to state a plausible claim).

**AFFIRMED.**